JOSEPH R. BRUERE, trustee &c., appellant,

*v.*

ALMIRA R. GULICK et al., administrators &c., respondents.

A testator, by his will, gave to his executors and the survivor of them one-fifth of the residue of his estate, in trust for the use and benefit of his son's wife for life, and, after her death, it was to go to the children of his son and his wife. He directed the executors to retain his son's indebtedness to him out of the share. There was a provision in the will for the manumission of a slave, and for her support out of the estate if she should become unable to support herself. Commissions were allowed to the executors upon the principal of the share of the residue given to the son's wife for life, and upon the principal of the sum set apart by the executors for the support (by the income thereof) of the slave. After the slave's death, the administrators

of the executor who outlived the other, accounted for the principal of the share, and for the principal of the fund for the support of the slave.—*Held,* that they were not entitled to receive commissions upon the funds; that the funds were in the hands of the executors, to be administered as executors; that the trust was inseparable from the executorship, and that, as the executors had received commissions thereon as executors, they were not, under the circumstances, entitled to commissions again as trustees.

Appeal from decree of Mercer orphans court.

*Mr. A. G. Richey,* for appellant.

*Mr. G. O. Vanderbilt,* for respondents.

THE ORDINARY.

By the third section of the will of William Gulick, deceased (the instrument is dated July 30th, 1855), he devised to his executors, and to the survivor of them, certain lands, in trust to receive the rents, issues and profits thereof, and pay them to his son, William A. Gulick, and his son's then wife, Sarah, each and every year during their lives, and, after their death, the property was to go to their children. By the residuary clause, he gave one-fifth of the residue of his estate to William. By the codicil (dated February 14th, 1863), he revoked that gift, and gave the fifth to his executors thereinafter named, and the survivor of them, in trust for the use and benefit of William's before-mentioned wife for life, and, after her death, it was to go to their children. By the codicil, he directed the executors to retain William's indebtedness to his estate out of the share, and if there should be any residue thereof after payment of that indebtedness, they were to invest it and pay the interest to William's before-mentioned wife for life, and the principal, after her death, was to go to the children. He revoked the appointment of executors made by the will, and appointed his son Alexander and Job S. Olden, and the survivor of them, executors. The inventory amounted to $151,393.08. By the first account (which was filed by Alexander Gulick alone, and ran from July 31st, 1865, to January 10th, 1867), the accountant charged himself with $164,082.21, and was allowed $3,461.64 as commis-

sions upon that sum.   He was charged, on that account, with a
balance of $86,013.48.   The next account was that of both
executors.   They charged themselves with that balance, and
$31,808.94 of additional receipts.   They were allowed commis-
sions to the ammount of $806.17 upon the $31,808.94.   This
account was sworn to, and allowed in February, 1870.   The
third account was passed in May, 1876, and was of the sum of
$4,000, retained, under the provisions of the will, for the sup-
port of Rachel, a slave, and interest thereon.   It was filed by
Alexander Gulick alone.   Job S. Olden, the other executor, was
then dead.   It charged the accountant with the $4,000 and
$1,680 of interest, and he was allowed commissions upon the
latter sum alone.   Alexander Gulick subsequently died, and his
administrators, in 1885, filed their account of his dealing with
the trust under the will in favor of William A. Gulick and his
wife and children.   It runs from January 1st, 1870 to January
15th, 1881.   It charges the amount received from settlement of
the estate of William Gulick, deceased, $6,518.91, and interest
received thereon, $6,241.80, and " cash from trust fund invested,
under the will of William Gulick, for Rachel, $824.17," and
interest received thereon, $422.38;  also, rents received from
farm (land devised by the third section of the will for the benefit
of William A. Gulick and his wife and their children), $8,400.
The commissions of the executor upon the interest and rents
were paid thereout.   The administrators claim commissions upon
the principal of the two funds;  that is, upon the $6,518.91, and
the $824.17.   The claim is resisted on the part of Mrs. Gulick.
The orphans court allowed it.

By the will the share in question was given to the executors,
and the survivor of them, in trust, and they were (as executors)
to collect the indebtedness due the estate from William A. Gulick
by retaining the amount of it from the share (and to that end
the power to convert the share into cash if they should deem it
necessary or advisable was conferred upon them), and they were
(as executors) to hold the balance in trust, to pay the interest to
William A. Gulick's wife for life, and at her death the principal
was to go to the children.   The provision for the slave was that

she should be free, and if she should become unable to support herself, the executors should support her out of the estate. These trusts devolved upon the executors as executors. In the case of the fund for the support of the slave, the principal constituted part of the residue, and it could not be distributed until she ceased to need support out of the estate, and then it would be the duty of the executors to distribute it.

There is no evidence in the provisions of the will that the testator intended that the executors should hold the balance, not as executors, but in a different capacity, as trustees. He clearly intended that the trust should be executed by the executors in that capacity. Where, as in this case, the trust is inseparable from the executorship, the executor is not entitled to double commissions, first as executor and then as trustee. *Everson* v. *Pitney, 13 Stew. Eq. 539,* and cases there cited. The supplement of 1882 to the orphans court act (*P. L. of 1882 p. 230*) supports this view of the subject. It provides that whenever, upon the settlement of the accounts of executors or trustees under a will, or of commissioners in partition, the usual commissions shall have been allowed them according to law, and in pursuance of the provisions of the will, or of the directions of the court, any money shall remain in the hands of or to be intrusted to any such person or persons for investment, the interest of which is required to be paid to any legatee or other person that may be entitled thereto, it shall and may be lawful, upon any subsequent accounting, for the court before which said account shall be presented for settlement and allowance to consider the actual pains, trouble and risk of such accountant, and to allow such commissions upon the interest or income received as to [by] the said court shall be deemed fair and just; provided, that said allowance shall not exceed the sum of five per centum on such interest or income. It will be seen that that act embraces such cases as this, and it is quoted to show that the legislature, when its attention was drawn to the subject, provided, not that there shall be double commissions on the principal, but that the accountant, where he shall once have had the usual commissions, shall receive his compensation for his further pains, trouble and

Dietz's Case.

risk, in commissions to be allowed him upon the interest and income only, and that then it shall not exceed five per centum of such interest or income.    It is admitted, and it so appears from the accounts also, that the executors received commissions according to law upon the principal of the fund in their accounts as executors.    The accountants in this case are not entitled to commissions upon the *corpus* of the trust fund.    It may be remarked that it seems that in the first account Alexander Gulick received commissions upon the whole amount of the inventory, though he asked and obtained allowance for $33,425.63 of it as unsettled and subject to a claim of off-set, and in the second account the executors received commissions again upon $24,610.05 for the same demand which had then been settled and that sum collected upon it.

The decree of the orphans court (which merely adjudges that the exceptions to the allowance of commissions on the principal of the trust fund be overruled, and that the accountants be allowed a commission at the usual rate upon such principal), will be reversed.    No costs, either above or below, will be awarded to either side.